UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO A. LOPEZ SOLIS, | No. 1:26-cv-00280-DAD-CSK |
| Petitioner, | FINDINGS AND RECOMMENDATIONS GRANTING PETITIONER'S WRIT OF |
| v. | HABEAS CORPUS |
| CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, et al., | (ECF No. 1) |
| Respondents. | |

Petitioner Roberto A. Lopez Solis, a native of Nicaragua who entered the United States on April 25, 2022, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials and released on his own recognizance on April 28, 2022, pursuant to 8 U.S.C. § 1226.  On December 30, 2025, petitioner was visiting his daughter and fiancée for the holidays in the Sacramento area when he was approached by two non-uniformed men who arrested and detained petitioner.  Petitioner has been in continuous detention since December 30, 2025. This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

I.    FACTUAL BACKGROUND[2]

Petitioner is a native of Nicaragua.  (ECF No. 1 at 4 ¶ 15; 26 ¶ 2.)  On April 25, 2022, petitioner entered the United States without inspection and was detained by ICE.  (ECF No. 1 at 6 ¶ 23; 26 ¶ 2.[3])  On April 28, 2022, petitioner was served with an interim notice of conditional parole and was required to enroll in an ATD monitoring program as a condition of his parole pursuant 8 U.S.C. § 1226 (Section 236 of the Immigration and Nationality Act ("INA")).  (ECF No. 1 at 6 ¶ 24; 26 ¶¶ 3-4.)  On the same day, petitioner was released into the United States on his own recognizance, and ordered to report to the ICE Enforcement and Removal Operations' office in New Jersey.  (ECF No. 1 at 6 ¶ 25; 26 ¶ 2.)  Petitioner was issued an Order of Release on Recognizance on June 2, 2022, expressly released pursuant to 8 U.S.C. § 1226 (INA § 236). (ECF No. 1 at 29.)

Petitioner filed an application for asylum, which is currently pending before the immigration court.  (ECF No. 1 at 6 ¶ 28; 26 ¶ 5.) On February 4, 2024, petitioner received a Notice of Action I-797 from United States Citizenship and Immigration Services ("USCIS") approving petitioner's I-765 Application for Employment Authorization from February 1, 2024 to January 21, 2029.  (ECF No. 1 at 6-7 ¶ 28; 30-31.)

On December 30, 2025, petitioner was visiting his daughter and fiancée for the holidays at his fiancée's apartment located in the Sacramento area.  (ECF No. 1 at 7 ¶ 29; 27 ¶ 7.)  While petitioner was in the apartment complex parking lot starting his car, two non-uniformed men approached petitioner and asked petitioner for his identification.  (Id.)  Petitioner provided his valid New Jersey driver's license.  (Id.)  One of the two ICE officers pointed his gun at petitioner's face and ordered him to get out of his car, where petitioner was then handcuffed and placed under arrest.  (ECF No. 1 at 7 ¶ 30; 27 ¶ 8.)  While petitioner was in the ICE officer's

---

[2]  The factual background comes from the petition and attached documents (ECF No. 1), which Respondents do not contest (see generally ECF No. 10).

[3]  The petition appears to have a typographical error for the year of petitioner's entry into the United States in paragraph 23 (listed as April 25, 2025), but the supporting documents submitted with the petition identify April 25, 2022 as the entry date (ECF No. 1 at 26 ¶ 2) and the release order is dated June 2, 2022 (ECF No. 1 at 29).  This typographical error does not affect the Court's analysis.

vehicle, petitioner was told the ICE officers just needed to make a phone call to see if everything was okay and that they "would let him go." (ECF No. 1 at 7 ¶ 31; 27 ¶ 8.) After making the calls, the ICE officers told petitioner that everything was okay but that petitioner's lawyer had not given notice that petitioner was moving to California. (ECF No. 1 at 27 ¶ 8.) Petitioner explained to the ICE officers that he was planning to head back to New Jersey but was in California because his daughter and fiancée resided in Sacramento. (ECF No. 1 at 27 ¶ 9.) The ICE officers did not release petitioner and transported him to the Sacramento Field Office. (ECF No. 1 at 27 ¶ 10.)

At the Sacramento Field Office, the arresting ICE officer interrogated petitioner about an Indian national who the ICE officers stated had an order of removal and was residing at petitioner's fiancée's apartment complex. (ECF No. 1 at 7 ¶ 32; 27 ¶ 10.) Petitioner was told by the ICE officers that his "arrest was never in the plans" but that he "just so happened to appear in front of them" while they were executing an order of removal of an Indian national. (ECF No. 1 at 7 ¶ 33; 27-28 ¶ 10.) Respondents have refused to release petitioner and assert petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). (ECF No. 1 at 8 ¶ 34; 28 ¶ 11.) Petitioner has been in continuous detention since December 30, 2025 and has no prior criminal record. (ECF No. 1 at 8 ¶¶ 35-36; 28 ¶ 12.) Petitioner has diligently complied with all the conditions and rules of the monitoring program and his order of release and supervision. (ECF No. 1 at 6 ¶ 27.)

## II.     PROCEDURAL BACKGROUND

On January 14, 2026, petitioner filed his petition for writ of habeas corpus and ex parte request for temporary restraining order. (ECF No. 1.) On the same day, the assigned district judge directed petitioner to file a motion for temporary restraining order in compliance with Local Rule 231 if he was seeking emergency relief. 1/14/2026 Minute Order (ECF No. 6). Petitioner did not file a motion for temporary restraining order. See Docket. Respondents timely filed their answer to the petition on February 9, 2026, and petitioner timely filed his traverse on the same day. (ECF Nos. 10, 11.) Briefing is now complete.

///

### III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

### IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued detention based on the violation of the following: (1) the Fifth Amendment substantive due process clause; (2) the Fifth Amendment procedural due process clause; (3) 8 U.S.C. § 1226(a); (4) bond regulations in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and (5) agency procedures, rules, or instructions pursuant to the Accardi[4] doctrine. (ECF No. 1 at 19-23.) Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A). (ECF No. 10 at 1-2.) Respondents cite Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. Feb. 6, 2026), in support of their position that § 1225(b)(2)(A) is applicable here. (Id. at 1.) Respondents also argue petitioner's due process claims fail on the merits. (Id. at 1.) Because the Court finds petitioner's relief is appropriate on two separate grounds, the Court need not address the petitioner's remaining claims.

---

[4]    United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

4

**A.    Statutory Claim**

The first issue here is whether petitioner, who has no criminal record and has lived in the United States since April 2022, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).   Under Section 1226(a), the Government has broad discretion whether to release or detain the individual.  See id.  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 10 at 2.)

The Court concludes that § 1226 applies to petitioner.  First, immigration authorities released petitioner on his own recognizance pursuant to § 1226 on June 2, 2022, as expressly provided in the Order of Release on Recognizance issued by DHS.  (ECF No. 1 at 29 (issued "[i]n accordance with section 236" of the INA,[5] releasing petitioner on his own recognizance).)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[6] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory

---

[5]  Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

[6]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 2026 WL 323330, is unavailing. In Buenrostro-Mendez, the Fifth Circuit recently agreed with respondents' interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL

6

413839, at *1 n.1 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D.W. Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2). This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released on his own recognizance pursuant to § 1226, he has resided in this country for over three years and eight months, and petitioner's December 2025 arrest and re-detention were not upon his arrival to the United States. As such, petitioner should have been provided a bond hearing before his re-detention.

///

7

**B.    Due Process Claims**

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment.  Respondents argue petitioner's due process claims fail on the merits.  (ECF No. 10 at 1.)  Respondents' asserted compliance with § 1225(b)(2)(A) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide

8

range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention then release in April 2022 and then his June 2022 order of release on his own recognizance pursuant to § 1226 is similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 3.5 years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the forgoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim

9

of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over three years and eight months, petitioner was free from custody before his re-detention.  Petitioner was employed, provided for his fiancée and his infant daughter, and has extended family in the United States.  (ECF No. 1 at 27 ¶¶ 4-5.)  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3

10

(N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 10.) In addition, respondents do not contend that petitioner has a criminal record. (Id.)

Here, petitioner has been detained since December 30, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest

11

in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance pursuant to § 1226 after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over three years and eight months on release, and he has no criminal record. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claims.

C.    Petitioner's Other Claims for Relief

In light of the Court's recommendation that petitioner's requested relief be granted on two separate grounds (violation of § 1226 and violation of due process), petitioner's remaining claims (Claims 4 and 5) need not be resolved.

///

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ordered to release petitioner Roberto A. Lopez Solis IMMEDIATELY and be ordered to provide petitioner with a copy of the release order at or near the time of release.

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The parties be directed to file, within **seven days** of the adoption of these findings and recommendations, a joint status report addressing petitioner's status.

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 19, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, lope0280.26